UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ARMANDO R. E.,<br><br>          Plaintiff,<br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. 2:22-cv-02907-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Armando R. E.[1] filed a Complaint seeking review of the decision of the Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits ("DIB"), and for Supplemental Security Income ("SSI") payments. The parties filed consents to proceed before a United States Magistrate Judge (ECF Nos. 11, 13) and briefs (ECF Nos. 23 ("Pl.'s Br."), 24 ("Def.'s Br."), and 25 ("Pl.'s Reply")) addressing the disputed issue in the case. The matter is now ready for decision. For the reasons set forth below, the Court

---

[1] In the interest of privacy, this Order uses only the first name and middle and last initials of the non-governmental party in this case.

finds that this matter should be remanded.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On December 3, 2019, Plaintiff filed his applications for a period of disability and DIB, and for SSI payments, alleging disability commencing on May 15, 2018. (ECF No. 18, Administrative Record ("AR") 17; *see also* AR 191-98, 199-205.) Plaintiff's applications were denied at the initial level of review and on reconsideration. (AR 17, 82, 83, 112, 113.) A telephonic hearing was held before Administrative Law Judge James P. Nguyen ("the ALJ") on January 13, 2021. (AR 17, 34-67.)

On March 17, 2021 the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability. (AR 17-29); *see* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1). At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (AR 19.) At step two, the ALJ determined that Plaintiff has the following severe impairments: generalized anxiety disorder; major depressive disorder; and panic disorder. (AR 19.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1 of the Regulations. (AR 21); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, as follows:

> He can understand, remember, and carry out simple job instructions. He can maintain attention and concentration to perform simple, routine and repetitive tasks. He can have occasional interaction with coworkers and supervisors, and no direct interaction with the general public. He can work in an environment with occasional changes to the work setting and occasional work-related decision making.

(AR 22.) At step four, the ALJ determined that Plaintiff is not able to perform his

past relevant work as a service manager, an automobile sales person, and a door-to-door representative. (AR 27.) At step five, based on the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including representative jobs such as a warehouse worker, a hand packager, and a laundry laborer. (AR 27, 53-54.) Based on these findings, the ALJ found Plaintiff not disabled through the date of the decision. (AR 28-29.)

The Appeals Council denied review of the ALJ's decision on March 1, 2022. (AR 3-7.) This action followed.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means -- and only means -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation." *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the

Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

Plaintiff raises the following issue challenging the ALJ's findings and determination of non-disability: the ALJ failed to properly evaluate Plaintiff's subjective symptom testimony. (Pl.'s Br. 2.) As discussed below, the Court agrees with Plaintiff and finds that remand is appropriate.

### A. LEGAL STANDARD

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first step and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal quotation marks omitted)). At the same time, the "ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted).

## B.   ANALYSIS

In the present case, the ALJ discounted Plaintiff's subjective complaints because they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" as the "medical record does not demonstrate evidence of symptoms, objective medical abnormalities, diagnoses, or treatment consistent with the severity of symptoms as alleged" by Plaintiff.  (AR 23.)

The ALJ summarized Plaintiff's testimony as follows:

> He alleged that his ability to work was limited by anxiety and depression, with symptoms of panic attacks, feelings of being overwhelmed, and nervousness. [He] alleged that he had two severe panic attacks per week, which involved feelings of doom and palpitations.  He asserted that a panic attack would last 2 hours[] if he did not take his medications.  He reported seeing a psychiatrist once every two months and seeing a therapist twice per month.  [He] indicated that his mother-in-law came over to his home to watch his two daughters, whenever his wife was away at work.  He stated that he required assistance to perform activities of daily living such as cooking, running errands, and driving more than 20 miles.  He asserted that he spent his days watching television and going for walks outside on his good days.  He alleged that on his bad days, with increased anxiety symptoms, he would stay in his room all day.  He alleged having three bad days per week.

(AR 23.)

Plaintiff contends that the ALJ discounted Plaintiff's subjective symptom testimony for three reasons:  (1) Plaintiff's mental status examinations were indicative of lesser severity of symptoms (Pl.'s Br. 5); (2) his symptoms appear to have improved and become stable, with conservative treatment involving psychotherapy and routine medication management (Pl.'s Br. 6); and (3) Plaintiff's reports of his daily activities to his medical providers indicate greater functional capacity than he alleged at the hearing (Pl.'s Br. 9).  He asserts that the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony and to identify the evidence that was inconsistent with his complaints.  (Pl.'s Br. 4.)

### 1. Mental Status Examinations

The ALJ opined that Plaintiff's "mental status examinations demonstrated only a few abnormalities, indicative of lesser severity of symptoms." (AR 24). He referenced mental status exams in the record that showed positive findings such as an anxious and depressed mood, tearful affect, sad and anxious mood, and congruent affect, but then noted that Plaintiff otherwise showed no abnormalities in areas like speech, thought process, thought content, cognitive function, concentration, judgment, and insight. (AR 24-25; citing AR 303-07, 321-25, 413-15.)

While the lack of supporting medical evidence can be a factor in evaluating a claimant's subjective complaints, it cannot "form the sole basis for discounting pain testimony." *See Burch v. Barnhart*, 400 F.3d 676, 681 (C.D. Cal. Jan. 20, 2005); *Bunnell*, 947 F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").

Here, the ALJ did not explain how a lack of abnormalities on a mental status examination in areas such as speech, thought process, thought content, cognitive function, concentration, judgment, and insight, were somehow inconsistent with Plaintiff's severe impairments of anxiety, depression, and panic disorder, or with his subjective symptom testimony regarding the symptoms and limitations he experiences as a result of those impairments.

Additionally, even on those occasions when Plaintiff showed normal thought process and other positive areas on mental status examination, the treatment notes also reflect that Plaintiff was having transient suicidal thoughts relating to loss of control while driving (AR 322); obsessions or preoccupations with cleanliness; having things in order; constantly repeating "now that I'm older" (AR 306, 415);

and mood/affect "okay" with fair judgment/insight (AR 415).  Other mental status examinations that were not specifically referenced by the ALJ, reported Plaintiff to have an anxious mood; and a mood that was anxious, frightened, and irritable. (AR 342, 751.)  Moreover, several mental status examination treatment notes reflected symptomatic complaints consistent with Plaintiff's testimony, including complaints of gait problems (due to weakness, fatigue, and lightheadedness); intermittent chest pain/discomfort that may be anxiety related; ongoing sexual problems (AR 304, 342, 413); assertion that his "sleep brain will not shut off"; poor concentration with multitasking; increased irritability; poor motivation; high degree of worry; difficulty handling multiple demands; avoidant behavior; and panic attacks while driving (AR 322).  Moreover, Plaintiff generally reported significant symptoms of depression, anxiety, and panic disorder. (AR 747.)

The Court determines that on this record, the ALJ's determination that the medical evidence did not support Plaintiff's subjective symptom testimony was not a specific, clear, and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.  Moreover, even assuming this was a specific, clear, and convincing reason to reject Plaintiff's testimony, it cannot be the only reason.  Thus, the ALJ's determination to discount Plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting Plaintiff's testimony.  As seen below, those other grounds are insufficient as well.

**2.     Conservative Treatment and Improvement**

The ALJ found that Plaintiff's symptoms appear to have been improved by and are stable with "conservative treatment modalities involving psychotherapy and routine medication management." (AR 24.)

Plaintiff argues that the stability of a condition does not undermine a claimant's allegations as to the intensity, persistence, or limiting effects of the

symptoms, and reflects only that the symptoms are not getting worse. (Pl.'s Br. 6 (citations omitted).) The Court agrees.

Indeed, it is questionable whether the record reflects actual improvement or conservative treatment. For instance, at a January 29, 2020, treatment visit, Plaintiff reported feeling like he is making progress and that the medications are helping, but the treating provider also noted that Plaintiff "has not gone out of his routine which keeps [him] feeling calm and in control." (Pl.'s Br. 6 (citing AR 25, 413).) A note from an April 21, 2020, treatment visit, relied on by the ALJ as reflecting that Plaintiff reported he was "generally doing okay," also reflected that Plaintiff takes Klonopin 1-2 times a week, when his anxiety becomes overwhelming. (AR 469.) The ALJ also relied on therapy notes from May 19, 2020, where Plaintiff allegedly reported ongoing progress and that he was using coping tools to manage his anxiety, but also "only reported that he was 'doing ok.'" (AR 25, 531.)

More recent records, not mentioned by the ALJ actually tend to reflect that Plaintiff's condition was worsening. (Pl.'s Br. 7 (citations omitted).) For instance, the October 26, 2020, psychiatric treatment note from Nurse Practitioner Sonnia Ahinasi ("NP Ahinasi"), documents that Plaintiff was having increased anxiety and panic attacks daily from driving (AR 746); he endorsed irritable mood, decreased sleep, indecisiveness, excessive worry or anxiety, difficulty controlling the worry, restlessness, feeling keyed up or on edge, easy fatiguability, difficulty concentrating, mind going blank, irritability, muscle tension, sleep disturbance and panic; daily panic attacks; intrusions, avoidance, negative cognitions/mood; and arousal alteration. (AR 747.) The mental status examination reflected that his mood was anxious, frightened, and irritable (AR 751) and NP Ahinasi diagnosed Mr. Espinoza with depressive disorder, panic disorder, and generalized anxiety disorder. (AR 754.) His medications at that time included Klonopin, Trazodone, Sildenafil, Duloxetine, Propranolol, and Amlodipine. (AR 754.)

Plaintiff notes that he sees a therapist twice a month and his psychiatrist every two months. (Pl.'s Br. 8 (citing 307, 417, 491, 500, 531, 539, 569).) He argues that psychotherapy and medication management is not conservative treatment for mental disorders. (Pl.'s Br. 8 (citations omitted).)

Although the ALJ generally described Plaintiff's medication management as "conservative," the record does not support this finding. Instead, it reflects that Plaintiff's treating providers frequently adjusted Plaintiff's medications. For instance, on February 16, 2018, he was started on Propranolol for anxiety, and Lexapro was added on November 20, 2018; on November 25, 2019, the Lexapro was stopped and he was started on Duloxetine and Clonazepam; on January 29, 2020, his Duloxetine was increased and Trazadone was added for insomnia on April 29, 2020; as of October 26, 2020, he "was on multiple mental health medications such as [Klonpin], Trazodone, Duloxetine, and Propranolol"; and, he testified at the hearing that he was started on Zoloft -- a new medication for him. (Pl.'s Br. 8-9 (citing AR 44, 307, 325, 342-43, 417, 492, 754).)

Additionally, the ALJ acknowledged Plaintiff's ongoing treatment for persistent anxiety and depressive symptoms, panic attacks, low energy, decreased concentration, irritability, fearfulness, excessive worrying, feelings of sadness, and insomnia; mental status examinations reflecting sad and anxious mood, with congruent affect; and diagnoses of generalized anxiety disorder; major depressive disorder; and panic disorder. In addition to the previously desribed medication changes, the ALJ also acknowledged that at least one of the medication adjustments (a switch from duloxetine and Klonopin to escitalopram and alprazolam), was "[d]ue to [Plaintiff's] reports of persistent depressive and anxiety symptoms"; and Plaintiff's report that his "anxiety was manageable *if not going anywhere* unknown or dark." (AR 24-25 (emphasis added).)

Based on the foregoing, the Court determines that the ALJ's determination

that Plaintiff's treatment was conservative, and that he experienced improvement and stability in his symptoms with medication, is not supported by substantial evidence. Accordingly, this was not a specific, clear, and convincing reason to discount Plaintiff's subjective symptom testimony.

### 3. Activities of Daily Living

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009)). An ALJ may also rely on a claimant's daily activities to support an adverse credibility determination when those activities "meet the threshold for transferable work skills"; i.e., where a claimant "is able to spend a substantial part of . . . [his] day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639. However, an ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (citation and alteration omitted). A claimant need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)) (internal quotation marks omitted). Indeed, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking

for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, the ALJ determined that Plaintiff's daily activities as reported to his medical providers indicate greater functionality than Plaintiff alleged at the hearing. (AR 24.) Specifically, the ALJ noted the following alleged inconsistencies: on August 20, 2019, Plaintiff reported that he injured his calf playing softball; on January 29, 2020, he stated he was driving his daughter at night to church; on April 21, 2020, he stated he was at home with his two-year old daughter and his sixteen-year old daughter, and that his mother-in-law was at his home for only about half the week (which the ALJ found to be inconsistent with Plaintiff's hearing testimony that is "mother-in-law is here all the time" (AR 42)); on April 21, 2020, he also reported that he continued to walk with his baby daughter every day, worked in the yard, spent time on the computer, and stated he "was connected to his church"; on May 19, 2020, Plaintiff reported that his wife and stepdaughter were at home more often, he was "enjoying having them home," that "everyone was getting along," and that he continued to walk twice a day with his baby daughter, "which was calming"; and, on October 26, 2020, he stated he took a daily walk for 45 minutes to an hour. (AR 24 (citations omitted).)

Plaintiff argues that the ALJ failed "to point out any discernible inconsistencies between . . . Plaintiff's hearing testimony and his statements in the record that indicate he is capable of functioning in a competitive work environment." (Pl.'s Br. 10.) For instance, when questioned by the ALJ at the hearing about the time Plaintiff's mother-in-law spends in his home, Plaintiff explained that the time she spends "varies when my wife sometimes stays home depending on what's going on, so she's here when my mother-in-law is not here," and his mother-in-law "adjusts her schedule" to be there when his wife is not there. (AR 42.) With respect to his daily walks, Plaintiff explained at the hearing in

January 2021, that his symptoms "had been a little worse and he would take a walk on good days." (AR 42, 47.) He further notes that many of his activities "are tools suggested by . . . [his] therapist to maintain a stable mood, i.e., 'keeping a schedule, limiting watching news, doing physical activity daily, going outside daily, eating healthy, keeping health[y] sleep routine, etc." (Pl.'s Reply 4.)

      The Court finds that the ALJ did not explain *how* Plaintiff's *limited* daily activities as reported to his providers -- even in combination -- contradict his hearing testimony such that his subjective symptom testimony should be discounted, or how those daily activities are transferable to a work setting. Neither does the ALJ point to any evidence showing that Plaintiff is able to perform sustained and continuous work for a substantial part of his day based on his limited daily activities, and the ALJ made no specific findings to support such a connection. Plaintiff's admitted daily activities as reported to his medical providers fail to provide substantial evidence of inconsistencies in his subjective symptom testimony.

      Accordingly, this was not a specific, clear, and convincing reason to discount Plaintiff's subjective symptom testimony.

## C.    CONCLUSION

      Where, as here, the ALJ fails to state legally sufficient reasons for discounting a claimant's subjective complaints, a court ordinarily cannot properly affirm the administrative decision. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006). The Court is unable to conclude that the ALJ's errors in evaluating Plaintiff's subjective complaints were "harmless" or "inconsequential to the ultimate non-disability determination." *Brown-Hunter*, 806 F.3d at 492.

//

//

//

## V. REMAND FOR FURTHER PROCEEDINGS

Remand is appropriate, as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## VI. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: May 5, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE